06-60420.om

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-60420-CIV-BROWN

**THIS IS A CONSENT CASE**

JAMES VENTURES, L.P., et al.,

    Plaintiffs,

vs.

TIMCO AVIATION SERVICES, INC.,

    Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Third Party Defendant Robert Alpert's Motion for Partial Summary Judgment [DE 220]. The Court has considered the Motion, the Response, the Reply, and all pertinent materials in the file.

### FACTS

Plaintiff James Ventures, L.P. ("JV") is a Texas limited partnership, of which Third Party Defendant Robert Alpert ("Alpert") is a general partner. Defendant TIMCO Aviation Services ("TIMCO") is a privately held Delaware corporation, with its principal place of business in Greensboro, North Carolina. TIMCO was previously known as Aviation Sales Company ("AVS"), a publicly traded Delaware corporation.[1] At all times material hereto, Alpert was a member of TIMCO's Board of Directors and Third Party Defendant Dale Baker ("Baker") was TIMCO's CEO and Chairman of the Board.

In mid-2000, because TIMCO was in fiscal distress due to pressure from its lead lender,

---

[1] AVS will be referred to as TIMCO in this Order.

1

Citicorp, USA, Inc. ("Citicorp") to liquidate assets and reduce debt, TIMCO agreed to sell its parts re-distribution business in a transaction involving Kellstrom Industries, Inc. ("Kellstrom"/the "Transaction"). Kellstrom was financing the Transaction through Bank of America, which required that Kellstrom have additional working capital. Kellstrom intended to accomplish this by selling and leasing back its headquarters building, and entered into a contract with Corporate Realty Investment Company which would have generated $14.5 million.

Alpert and Baker approached three prospective investors, inquiring whether they would each post a $2 million letter of credit in order to solve Kellstrom's working capital problem by "monetizing" Kellstrom's equity in the Kellstrom Building. A "Letter of Credit Facility" was created and four letters of credit ("LOC") were posted in the amount of $2 million each by JV, Don Sanders, LJH Corporation, and Robert Belfer (collectively "LOC Lenders") on October 17 and 18, 2000. The Transaction closed on or about December 2, 2000. After Kellstrom fell into financial difficulty, the LOCs were called by Bank of America on October 21, 2001.

This lawsuit was filed in Arizona federal court on October 25, 2005. JV contends that TIMCO, through Baker, orally promised the LOC Lenders on or before the time the LOCs were posted, that it would indemnify them if Kellstrom failed to fully perform its obligations to the LOC Lenders (the "Guaranty"). JV alleges that it funded 62.5% of the monies due to Bank of America under the LOCs and that through purchases and assignments it currently owns or controls all rights and claims under the Guaranty. The Second Amended Complaint raises claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing, for failure of TIMCO to honor the Guaranty. TIMCO has filed a Counterclaim against JV for Declaratory Relief, and Third Party Claims against Baker and Alpert for Breach of Fiduciary Duty and Fraud, and against Baker for Negligent Misrepresentation, based on the failure to disclose the existence of the Guaranty.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper only when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). The Court must view all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Id. A genuine issue as to material fact exists only when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997). For the nonmovant to survive such a grant, there must be more than a mere scintilla of evidence. Id.

### II. Proof of Detrimental Reliance

For purposes of this motion only, in which Alpert seeks summary judgment as to the fraud count, the Court assumes that the Guaranty was given by TIMCO. Alpert first argues that there is no evidence that TIMCO reasonably relied to its detriment on any omission by Alpert, as is necessary for proof of a fraud claim under Florida law. See, e.g., Romo v. Amedex Ins. Co., 930 So. 2d 643, 651 (Fla. 3d DCA 2006). Alpert argues that because a business entity can only act through its agents, and Baker knew of the Guaranty, that knowledge is imputed to TIMCO, thereby precluding any detrimental reliance on the part of TIMCO.

The general rule is that "whatever knowledge an agent acquires within the scope of his authority is imputed to his principal." Lanchile Airlines v. Connecticut General Life Ins. Co. of North

Amer., 759 F. Supp. 811, 814 (S. D. Fla. 1991); see also Davies v. Owens-Illinois, 632 So. 2d 1065, 1066 (Fla. 3d DCA 1994). However, under the "adverse interest" exception, knowledge will not be imputed "if an agent is 'secretly ... acting adversely to the principal and entirely for his own or another's purposes.'" Lanchile, 759 F. Supp. at 814 (quoting Restatement (Second) of Agency, §282 (1958)). The current version of the Restatement states:

> For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows ... is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person. Nevertheless, notice is imputed
> (a) when necessary to protect the rights of a third party who dealt with the principal in good faith; or
> (b) when the principal has ratified or knowingly retained a benefit from the agent's action.
> A third party who deals with a principal through an agent, knowing or having reason to know that the agent acts adversely to the principal, does not deal in good faith for this purpose.

Restatement (Third) of Agency, § 5.04 (2006). "The mere fact that the agent's primary interests are not coincident with those of the principal does not prevent the latter from being affected by the knowledge of the agent if the agent is acting for the principal's interests." Lanchile, 759 F. Supp. at 814 (citing Restatement, §282, comment c.).

With respect to the general rule, the Court cannot determine as a matter of law that Baker was acting "within the scope of his authority" (emphasis added) when the Guaranty was made, in that Baker testified as follows:

> Q. In any conversations with anybody about this possibility, did you say in an affirmative way AVS will guarantee any obligations flowing from these letters of credit?
> A. No. I couldn't make that statement.
> Q. So you did not make that statement?
> A. I did not and could not.
> Q. Why could not?
> A. I didn't have the authority to go out and bind the corporation on my own authority to start announcing that I'm giving guarantees to people.
> Q. And as we've discussed before, you would have presented this transaction to the AVS board for approval, correct?

4

>    A.   Yes. Would have.
>
>            *   *   *
>
>    Q.   It's correct that never happened?
>    A.   That's correct it never happened.

Baker dep. pp. 110-111. An independent director of TIMCO, Sam Humphreys, testified that the entering into of the Guaranty by Baker "could have been" within Baker's authority, and that he understood that Baker "had, in fact, spoken to, at least, a majority of the directors who said facing that setting, the company should do whatever's necessary to provide the LC lenders whatever comfort they need to make sure this Kellstrom deal closed, you know, within reason." Humphreys dep. p.130. The Court finds that there is an issue of fact as to whether Baker was acting within the scope of his authority in making the Guaranty, and therefore whether his knowledge can be imputed to TIMCO.

With respect to the adverse interest exception, although there is some evidence that the Guaranty would have been adverse to certain of TIMCO's interests[2], it is uncontested that at the time the Guaranty was allegedly made, TIMCO was in dire financial straits, and the Kellstrom Transaction was an attempt to relieve this burden. See Baker dep. pp. 75, 77, 194; Schwartz dep. p. 91-92. This evidence suggests that Baker was not "acting adversely to [TIMCO] and entirely for his own or another's purposes.'" Lanchile, 759 F. Supp. at 814 (quoting Restatement (Second) of Agency, §282 (1958) (emphasis added)).[3] Therefore, if it is determined that Baker did have the authority to enter into the Guaranty, it appears that the adverse interest exception would not apply.

Alpert further argues that even disregarding Baker's personal knowledge, TIMCO had knowledge of the Guaranty as of April 23, 2002, when TIMCO's attorney and director, Philip Schwarz, sent a letter to Patrick Hayes, an attorney who represented the LOC lenders. The subject

---

[2]There evidence in the record that Citibank had not given its consent to a guaranty, and that such an agreement would have violated TIMCO's Credit Agreement and its disclosure obligations.

[3]It additionally appears that TIMCO received a benefit from the LOCs in that its lenders were paid. Schwartz dep. p. 91-92.

letter states, in pertinent part, that "[TIMCO] has no obligation to the Kellstrom credit support lenders to indemnify them for losses which they may incur relating to their loan to Kellstrom." The Court disagrees with Alpert that "[t]he only reasonable inference" from this letter is that Guaranty was disclosed to TIMCO some time prior to April 23, 2002, and agrees that this letter, which never mentions the Guaranty or any specific source of an alleged indemnity obligation, is insufficient proof of knowledge of the Guaranty on the part of TIMCO.

### III. Proof of Damages

Alpert next argues that TIMCO cannot show that it has been damaged because any payments by TIMCO to satisfy its contractual obligations were caused by the contract, not due to any reliance by TIMCO on any alleged omission by Alpert.

TIMCO alleges that as a proximate result of Alpert's failure to disclose the Guaranty it "suffered significant injury in its ongoing business." Third Party Cmplt. ¶ 47. TIMCO argues it was damaged by its lack of knowledge (1) when it took no action against the entity which defaulted on the purchase of the Kellstrom Building, (2) during its negotiation of its own claims with Kellstrom prior to and after Kellstrom filed for bankruptcy and (3) when it was unable to pursue any claims against Bank of America for wrongfully drawing on the LOCs. The Court finds that the testimony of Philip Schwartz and the inferences which can be drawn therefrom, in TIMCO's favor, raises a sufficient issue of fact as to whether TIMCO suffered damage due to the alleged failure by Alpert to disclose the existence of the Guaranty.

Accordingly, and the Court being otherwise fully advised, it is hereby **ORDERED AND ADJUDGED** that Third Party Defendant Robert Alpert's Motion for Partial Summary Judgment is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of January, 2008.

STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record