06-60420.op

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 06-60420-CIV-BROWN

**THIS IS A CONSENT CASE**

JAMES VENTURES, L.P., et al.,

    Plaintiffs,

vs.

TIMCO AVIATION SERVICES, INC.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on the Motion for Summary Judgment of Defendant/Counterclaim Plaintiff and Third Party Plaintiff TIMCO Aviation Services, Inc. on the Claims by Plaintiff and, in the Alternative, on its Third Party Complaint Against Robert Alpert [DE 221]. The Court has considered the Motion, the Response, the Reply, the supplemental pleadings, and all pertinent materials in the file. Additionally, a hearing was held on this motion on March 12, 2008, and the Court incorporates by reference the transcript of that hearing.

### FACTS

Plaintiff James Ventures, L.P. ("JV") is a Texas limited partnership, of which Third Party Defendant Robert Alpert ("Alpert") is a General Partner. Defendant TIMCO Aviation Services ("TIMCO") is a privately held Delaware corporation, with its principal place of business in Greensboro, North Carolina. TIMCO was previously known as Aviation Sales Company ("AVS"), a publicly traded Delaware corporation.[1] At all times material hereto, Alpert was a member of

---

[1] AVS will be referred to as TIMCO in this Order.

1

TIMCO's Board of Directors and Third Party Defendant Dale Baker ("Baker") was TIMCO's CEO and Chairman of the Board.

In mid-2000, because TIMCO was in fiscal distress due to pressure from its lead lender, Citicorp, USA, Inc. ("Citicorp") to liquidate assets and reduce debt, TIMCO agreed to sell its parts re-distribution business in a transaction involving Kellstrom Industries, Inc. ("Kellstrom"/the "Transaction"). Kellstrom was financing the Transaction through an $8 million loan from Bank of America, which required that Kellstrom have additional working capital. Kellstrom intended to accomplish this by selling and leasing back its headquarters building, and entered into a contract with Corporate Realty Investment Company which would have generated $14.5 million.

Alpert and Baker approached three prospective investors, inquiring whether they would each post a $2 million letter of credit in order to solve Kellstrom's working capital problem by "monetizing" Kellstrom's equity in the Kellstrom Building. Four letters of credit ("LOC") were posted on November 30, 2000 in the amount of $2 million each by JV, Don Sanders, LJH Corporation, and Robert Belfer (collectively "LOC Lenders"). In consideration for the LOCs, Kellstrom entered into an Agreement With Respect to Standby Letter of Credit Facility ("LC Facility Agreement"),which provided that any draw by Bank of America under the LOCs would be considered a term loan ("Loan"), which would be repaid by Kellstrom according to the terms of a Promissory Note dated December 1, 2000. The LC Facility Agreement provided that any payments pursuant to the notes would have to come from the proceeds of the sale certain properties described in the LC Facility Agreement. The Loan Maturity date provided in the LC Facility Agreement was December 1, 2001, or on the earlier date that Kellstrom received any proceeds from the sale of the Kellstrom Building. The Transaction closed on or about December 2, 2000.

After Kellstrom fell into financial difficulty, the LOCs were called by Bank of America on or about October 21, 2001. SOF 75. When the sale of the Kellstrom Building fell through, in the fall of 2001 the LOC Lenders took steps to acquire the Kellstrom Building, but the purchase did not take

2

place. The Kellstrom Building was ultimately purchased by Danro Corporation, General Partner of JV, in November of 2003, and Danro then sold the building to a third party in November of December, 2004.

JV filed this lawsuit in Arizona federal court on October 25, 2005. JV contends that TIMCO, through Baker, orally promised the LOC Lenders on or before the time the LOCs were posted, that it would "indemnify" them if Kellstrom failed to fully perform its obligations to the LOC Lenders (the "TIMCO Agreement"). JV alleges that it funded 62.5% of the monies due to Bank of America under the LOCs and that through purchases and assignments it currently owns or controls all rights and claims under the TIMCO Agreement.[2]

TIMCO moved to dismiss this case in the District of Arizona for lack of personal jurisdiction and improper venue. The parties then agreed to a transfer to this Court under 28 U.S.C. §1404(a).

For purposes of this Motion only, TIMCO assumes the existence of the TIMCO Agreement.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper only when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002). The Court must view all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Id. A genuine issue as to material fact exists only when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

---

[2] The Second Amended Complaint raises claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing based on the failure of TIMCO to honor the TIMCO Agreement. TIMCO has filed a Counterclaim against JV for Declaratory Relief, and Third Party Claims against Baker and Alpert for Breach of Fiduciary Duty and Fraud, and against Baker for Negligent Misrepresentation, based on the failure to disclose the existence of the TIMCO Agreement.

(1986). Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997). For the nonmovant to survive such a grant, there must be more than a mere scintilla of evidence. Id.

## I.     Real Party in Interest

TIMCO claims that JV is not the real party in interest with the right to bring claims under the TIMCO Agreement because it assigned any such claims against TIMCO to Danro Corporation, the corporate general partner of JV, in an "Assignment and Assumption of Proceeds Sharing Agreement" dated November 13, 2003 ("Danro Assignment").[3] TIMCO argues that the complaint must be dismissed pursuant to Fed.R.Civ.P. 17(a), which provides that "[e]very action shall be prosecuted in the name of the real party in interest." See also Lans. v. Gateway 2000, Inc., 84 F. Supp. 2d 112 (D.C. 1999) ("All civil actions in federal court must be asserted in the name of the real party in interest, which is generally the person or entity 'possessing the right or interest to be enforced through the litigation." (quoting 3 James Wm. Moore, et al., Moore's Federal Practice, ¶17.10[1] (3d ed. 1999)), aff'd, 252 F.3d 1320 (Fed. Cir. 2001).

The Danro Assignment provides, inter alia, as follows:

> **WHEREAS**, Assignor [JV] is a party to that certain Proceeds Sharing Agreement dated July 17, 2003 (the "Proceeds Agreement"), by and among Bank of America, N.A., Assignor, Robert Belfer, Don Sanders, LJH, Ltd., and William Boyar, as trustee;
>
> **WHEREAS**, the Proceeds Agreement provides for, among other things, the purchase of that certain office/warehouse facility located at 1100 International Parkway, Sunrise, Florida (the "Property"), as more particularly described in

---

[3]This Assignment obviously predates the filing of this lawsuit.

4

>the Proceeds Agreement;
>
>**WHEREAS**, Assignor is a party to that certain **Agreement with Respect to Standby Letter of Credit Facility dated December 1, 2000 (the "LC Facility Agreement")**, executed by Kellstrom Industries, Inc. and Assignor, Robert Belfer, LJH, Ltd., Don A. Sanders and J. William Boyar;
>
>**WHEREAS**, Assignor desires to Assign to Assignee [Danro], and Assignee desires to assume, all of Assignor's right title and interest in and to the Proceeds Agreement and **the LC Facility Agreement, and any and all rights ancillary thereto;**
>
>**NOW THEREFORE**, Assignor does hereby TRANSFER, ASSIGN AND CONVEY to Assignee all of Assignor's rights, titles, and interests under the Proceeds Agreement, **the LC Facility Agreement, and any and all rights ancillary thereto.** By acceptance of this Agreement, Assignee accepts the Proceeds Agreement and the LC Facility Agreement (and any and all rights ancillary thereto) and agrees to assume and be bound by the obligations of the Assignor thereunder. ...

Mot. Ex. 39 (emphasis added).

The Court finds that any enforceable rights under the TIMCO Agreement, whether it is considered one to "indemnify," "stand behind" or "guaranty" Kellstrom's performance under the LC Facility Agreement, would be considered "rights ancillary to" the LC Facility Agreement, and therefore covered by the Danro assignment.[4] Following the hearing on this motion, TIMCO filed certain portions of Danro's 1994 income tax returns, which reflect that Danro claimed a loss from the sale of the Kellstrom Building, further evidencing that at that time, Danro, not JV, was the entity which had the right to recoup that loss.

In its Response, JV contends that it, not Danro, had the right to the claims when suit was filed in October of 2005, referencing "certain assignments between it, Belfer, Danro, Alpert and Sanders." Resp. pp. 19-20, n. 102. However, the support cited for this proposition is the Assignment discussed

---

[4] "Ancillary" is defined as "supplementary; subordinate." Black's Law Dictionary 95 (8th ed. 2004).

in the preceding paragraph. JV then "out of an abundance of caution," submits Assignments dated December 11, 2007( the day prior to TIMCO's filing of this summary judgment motion) from Belfer, Alpert and Danro, in which they "assign to [JV] ... all of [Belfer, Alpert and Danro]'s rights, remedies, claims, causes of action and interests arising out of or relating to the issuance of the letters of credit and the TIMCO Indemnity Agreement." Resp. Exs. H-J.

Although these "new assignments" may have transferred rights existing as of December 11, 2007, JV has failed to present any evidence which shows that it, rather than Danro, had the right to bring claims on the TIMCO Agreement in October, 2005 when this case was filed. The new assignments do reference "previous assignments related to (1) the issuance of the letters of credit and (2) the TIMCO Indemnity Agreement." At the hearing, those assignments were identified as Exhibit 37, which is a document entitled "Assignment of Rights and Claims Related to Kellstrom Industries, Inc." from Sanders to Alpert, individually, dated October 9, 2003, and Exhibit 38, which is a similar unexecuted assignment from Belfer to JV dated November 11, 2003. Even if the Belfer assignment did validly transfer rights to JV, it did so prior to the Danro Assignment from JV to Danro on November 13, 2003. It does nothing to create any ownership interest in JV as of October, 2005 when this action was filed. See Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 460 (5th Cir. 2005) (stating that a "party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing.")[5]

---

[5]Its Response to TIMCO's Notice of Filing Additional Evidence, JV argues that "the fact that [JV] acted through its general partner to accomplish certain tasks, including the purchase of the Kellstrom building does not change the fact that [JV] is the assignee of the claims against TIMCO." What JV fails to acknowledge is that on the critical date when this case was filed, JV was not the assignee of the claims, Danro was. Separate legal entities are intentionally created. JV cannot play a "shell game" in which it reaps the benefit of a possible recovery of losses which it voluntarily assigned to a separate legal entity, albeit an entity which is also its general partner.

Based on the foregoing, the Court finds that Danro, not JV, was the real party in interest as to claims under the TIMCO Agreement when this suit was filed on October 25, 2005. JV requests that the Court order a substitution of Danro as plaintiff pursuant to Federal Rule of Civil Procedure 17(a), which provides as follows:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification or commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Substituting Danro at this date would not solve the problem, in that it appears that Danro currently does not own the rights, due to the assignment by Danro to JV on December 11, 2007. Furthermore, the Advisory Committee Notes to the Rule state that its purpose is "simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have the proper effect as res judicata." Fed.R.Civ.P. 17 (Advisory Committee Notes, 1966 Amendment). They note that "modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed" and "to prevent forfeiture when determination of the proper party to sue is difficult or where an understandable mistake has been made." Id. In this case, a determination of the party with standing to sue was not difficult, and there is no evidence of any "honest mistake" having been made in naming JV as the Plaintiff, rather than Danro. The Court therefore finds that substitution is not appropriate in this case. See Live Entertainment, Inc. v. Digex, Inc., 300 F. Supp.2d 1273, 1277 (S.D. Fla. 2003) (and cited cases); Lans, 84 F. Supp. 2d at 122-23.[6]

---

[6]Keeping JV as the Plaintiff based on the new assignments would also not be appropriate. See United States v. CMA, Inc., 890 F.2d 1070, 1075 (9th Cir. 1989) ("Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment.") Furthermore, allowing such a substitution would

Accordingly, the Court finds that this action should be dismissed pursuant to Fed.R.Civ.P. 17.

## II. Statute of Limitations

Even if JV had the right to raise the claims made in this case, those claims are barred by the applicable statute of limitations, which the Court finds must be determined by the law of Arizona, the jurisdiction where the case was originally filed.

"A federal court in a diversity case must generally apply the state law that would be applied by the courts of the state in which it sits." Roofing & Sheet Metal Serv. Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991 (11th Cir. 1982). However, when a defendant successfully moves to transfer to another jurisdiction, the transferee district should generally apply the state law that would have been applied if there had been no change of venue. Id. (citing Van Dusen v. Barrack, 376 U.S. 612 (1964)). JV argues that the rationale of Van Dusen does not apply in this case, because the transferor court (District of Arizona) lacked personal jurisdiction over TIMCO. See Roofing & Sheet Metal Serv., 689 F.2d at 991.

The Court rejects this argument, in that there has been no judicial determination that the Arizona court had no personal jurisdiction over TIMCO. Although TIMCO originally moved to dismiss on this basis, in its Reply TIMCO notes that since the transfer, it has not pursued that issue, and to the extent that it is necessary, formally withdraws that position. The Eleventh Circuit has recognized that "[l]ack of personal jurisdiction ..., unlike lack of subject matter jurisdiction which

---

require the Court to delve into the circumstances surrounding the execution of the "new" assignments, which the current trial schedule will not allow. In its Supplemental Reply, TIMCO attaches a partially executed Assignment transferring Belfer's rights to two other companies of which Alpert was President, Markus Investments, Inc. and James Investments, Inc., which are not involved in the instant case (Exhibit A). TIMCO states that JV improperly withheld this document from production as "privileged," and was only recently disclosed by JV as a trial exhibit. This document further supports the Court's decision not to substitute Danro as Plaintiff at this point in the proceedings.

requires dismissal on the court's own motion if not raised by the parties, [footnote omitted] are waivable defects." Lipofsky v. New York State Workers Compensation Board, 861 F.2d 1257, 1257 (11th Cir. 1988). A defendant may waive the requirement that the court have personal jurisdiction over it either explicitly or implicitly. Chandler v. Daly, No. 06-2742B, 2007 WL 2262994, at *2 (W.D. Tenn. Aug. 3, 2007) (quoting Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998)).

TIMCO has now expressly waived its personal jurisdiction objection, and this Court may not, sua sponte, determine that issue. Lipofsky, 861 F.2d at 1258 (stating that "[i]n the absence of a waiver, a district court may raise on its own motion an issue of ... lack of personal jurisdiction, but the court may not dismiss without first giving the parties an opportunity to present their views on the issue.") (emphasis added); see also Chandler, 2007 WL 2262994, at *2 (finding that where defendant withdrew challenge to personal jurisdiction, he "essentially conceded that the [transferor] court had personal jurisdiction" and the choice of law rules of that state would apply.) Accordingly, the Court finds that the choice of law rules of Arizona apply to this case.[7]

In determining which statute of limitations to apply, Arizona follows the approach adopted in the revised Restatement (Second) of Conflict of Laws § 142 (1988)." See DeLoach v. Alfred, 960 P.2d 628, 629 (Ariz. 1998)(en banc). That section provides that

> [w]hether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in §6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) the forum will apply its own statute of limitations barring the claim. ...

---

[7]The Court notes that this result comports with the courts' concern that the parties not engage in forum shopping, in that Arizona was the jurisdiction originally chosen by Plaintiff.

Id.[8]  Under Arizona law, the statute of limitations applicable to a breach of oral contract of indebtedness is 3 years. (Az. Stat. §12-543). An action accrues "whenever one person may sue another." Healey v. Coury, 783 P.2d 795 (Ariz. App., Div. 2 1989). With respect to breach of contract, generally the statute of limitations runs from the time of breach. See, e.g., Angus Med. Co. v. Digital Equip. Corp., 840 P.2d 1024, 1027 (App. Div. 1 1992).

JV argues that the statute of limitations on its claims did not start running until its loss became "liquidated" after the sale of the Kellstrom Building in 2004, relying on HSL Linda Gardens Properties, Ltd. v. Freeman, 859 P.2d 1339 (Ariz. App., Div. 2 1993). In that case, the court found that a cause of action did not accrue with respect to a breach of statutorily created implied covenants running with land, which had been construed to create a promise to indemnify, until there was damage. Id. at 1340-41 (citations omitted). The court noted that "[w]hile conveying with encumbrances is necessarily a breach of a covenant not to do so, that breach need not always cause damage." Id. at 1341. The court noted that it was "depart[ing] from the prevailing view that the statute of limitations for breach of contract runs from the breach and not from any damage resulting therefrom ..." but stated that the application of that rule would be "senseless on the facts of this case." Id. In a subsequent case, La Canada Hills Ltd. Partnership v. Kite, 171 P.3d 195 (Ariz. App., Div. 2 2007) the court reemphasized that it decided HSL Linda Gardens based on its own facts and had departed from the general rule that the cause of action accrues upon the breach. Id. at 199-200. The court found

---

[8]JV argues that the Court must consider whether the courts of Florida, which it claims has a more significant connection to the claims, would bar the claim. Under the Restatement, this analysis only applies if Arizona's statute of limitations would permit the claim, in which case the Court should consider whether the claim would be barred by the law of another forum with a more significant relationship to the claim (here, possibly Florida) or unless permitting the claim would not serve Arizona's interests. DeLoach, 960 P.2d at 629; see also Jackson v. Chandler, 61 P.3d 17, 19 (Ariz. 2003).

10

no similar circumstances in the case before it which would require such a departure. Id.

Similarly, there are no circumstances in the instant case which would call for a departure from the general rule, in that even JV itself has acknowledged in this litigation that the LOC Lenders suffered damage as a result of the action (or inaction) of Kellstrom (whose performance TIMCO allegedly guaranteed) at least as of December 1, 2001, when the loan was not repaid, or possibly as early as October, 2001 when the LOCs were called. In its Amended Response to Defendant [TIMCO's] Second Set of Interrogatories to Plaintiff [JV] and Third Party Defendant Robert Alpert (Ex. 27), JV stated as follows:

> 8. Identify the date on which Aviation Sales Company ("AVS") became obligated to make payment on the Indemnification, and state the events occurring on that date giving rise to that obligation.
>
> **ANSWER**:
>
> Under the Agreement with Respect to Letter of Credit Facility Section 2.04, the amount due to the Letter of Credit Lenders for amounts drawn on the LOCs were due on the earlier of the sale of the Kellstrom Headquarters Building or December 1, 2001. **Because the sale of the building did not take place until after December 1, 2001, the payment was due on December 1, 2001. Thus it was on that date that Kellstrom was first obligated to pay for amounts drawn on the LOCs. Likewise, TIMCO's obligation arose earliest at that time.** However, the LOC Lenders had a security interest in the proceeds of the sale of the Kellstrom Building and, ultimately, a right to purchase the building to offset losses associated with the provision of the LOCs. Until the LOC Lenders (or any one of them) acquired and sold the Kellstrom Building, there was no certainty that the LOC Lenders had suffered any loss. Accordingly, TIMCO's obigation to make payment to the LOC Lenders on December 13, 2004, the date on which Danro (as assignee) sold the Kellstrom Building. [sic] TIMCO, however, repudiated its obligation on April 23, 2002. (emphasis added).

Although this response is less than clear, in its Response to the instant motion, JV states:

> The Loan Maturity Date is defined as December 1, 2001. [footnote omitted] The sale of the Kellstrom Building did not occur until well after 2001. [footnote omitted] Accordingly, the first date Kellstrom had an obligation to pay the LOC Lenders was December 1, 2001. Kellstrom was in default on this date when it failed to pay. [footnote omitted]. JVLP commenced this action in the

11

    Arizona District Court on October 24, 2005, within the four year limitation period.[9]

Resp. p. 9-10.

  Alpert, who is the only witness who has testified as to the specific language of the alleged promise made by TIMCO, testified that at the moment that the LOCs were called, in October, 2001, the LOC Lenders had a right to demand payment from TIMCO. Alpert Dep. 111:1-18.[10] Finally, JV's expert witness, Stanley A. Murphy, CPA, ABV, CIRA, CVA, treats the sale of the Kellstrom Building as an attempt to "mitigate damages," and begins calculating JV's actual damages as of October 21, 2001. Ex. 41, ¶¶9, 11.

  The Court finds that because damage allegedly occurred as early as October, 2001, and at least as of December 1, 2001, the prevailing rule that the cause of action accrued at the time of breach applies. The Court need not determine whether the statute of limitations began running in October, 2001 when the LOCs were called, or on December 1, 2001 because in either case, the filing of this suit in October 2005 would be barred by the Arizona 3 year statute of limitations.[11] Completing the analysis under the Restatement, the Court finds no exceptional circumstances which would prevent Arizona's statute of limitations from being applied, particularly considering that Arizona was JV's

---

  [9] JV was applying the four year statute of limitations of Florida, which this Court has already rejected.

  [10] Sanders also so testified. Sanders Dep. 39:7-17.

  [11] The Court further finds that to the extent JV argues that the agreement was one for indemnity, which means "[a] duty to make good any loss, damage or liability incurred by another," Black's Law Dictionary 784 (8th ed. 2004)), the claim would still be barred. In such case, the statute would begin running on the date that the LOC Lenders first paid on the obligation, or October 21, 2005, more than four years prior to the date this lawsuit was filed.

original choice of forum.[12]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion for Summary Judgment of Defendant/Counterclaim Plaintiff and Third Party Plaintiff TIMCO Aviation Services, Inc. on the Claims by Plaintiff is hereby **GRANTED**, and the Alternative Motion for Summary Judgment on its Third Party Complaint Against Robert Alpert is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of April, 2008.

_____
STEPHEN T. BROWN
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of record

---

[12]The Court rejects TIMCO's argument that the TIMCO Agreement is unenforceable under the portion of the Florida Statute of Frauds which provides that "[n]o action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof ... unless the agreement or promise ... [is] in writing ...." Fla. Stat. § 725.01. The Statute prohibits enforcement of a contract "when the parties intended and contemplated that performance of the agreement would take longer than one year." Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991) (citing Yates v. Ball, 181 So. 341, 344 (Fla. 1937)). Intent "can be inferred from the 'surrounding circumstances' or the 'object to be accomplished.'" Id. In Yates, the court stated that "[t]o make a parol contract void, it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made." 181 So. at 344. (emphasis added). The alleged promise in this case was made on or before November 30, 2000 (the date of the LOC's). Although TIMCO's performance did not occur within a year of that date, the record does not support a finding that the parties intended that TIMCO not perform within a year, in the event that Kellstrom failed to perform on its obligations incurred during that time. Accordingly, the Court finds that the TIMCO Agreement is not barred by the Statute of Frauds.

The Court also declines to grant summary judgment on TIMCO's argument that it had no duty to pay on the Notes because pursuant to the Agreement the payment was required to come from the proceeds of the permitted sale-leaseback of certain properties, and those sales did not occur, in that it improperly characterizes the Indemnity Agreement. With respect to the arguments that Baker did not have either actual or apparent authority to enter into the TIMCO Agreement, and that the TIMCO Agreement would be invalid because it required approval of the board and needed to be disclosed, there are issues of material fact.